UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

Christopher Earl Bee,                           Case No. 15-56509-wsd
                                                                      Chapter 7
          Debtor.                               Hon. Walter Shapero
_____/

## OPINION SETTING ASIDE FEBRUARY 4, 2016 ORDER ENTERED AGAINST SHEALIA TYSON AND DENYING RELIEF REQUESTED BY THE U.S. TRUSTEE, BUT PROVIDING FOR A FURTHER HEARING

The U.S. Trustee filed an Amended Motion for an Order Finding Bankruptcy Petition Preparer Shealia Tyson in Violation of 11 U.S.C. 110, Ordering the Return of Payments Received from the Debtor, and Further Ordering the Payment of Fines to the Debtor and to the United States Trustee (Dkt. 24). Shealia Tyson filed an untimely *in pro per* response (Dkt. 27) defending against the U.S. Trustee's allegations. At a scheduled February 4, 2016 hearing on the U.S. Trustee's motion, Ms. Tyson failed to appear and an Order (Dkt. 30) granting the requested relief was entered against her. Subsequent to the entry of that Order, and also on February 4, 2016, Ms. Tyson filed a further response explaining the circumstances of her non-appearance, including that she had relocated to Washington, DC to care for her mother, who has recently passed away. The Court held a further hearing on March 10, 2016 (as required by the February 4, 2016 Order to certify Ms. Tyson's compliance with its terms). This matter was initially heard on the morning motion docket on March 10, 2016, at which the Court indicated after hearing arguments that it would take evidence later that day if the parties were agreeable, which they indicated they were. That evidentiary hearing was held later that day and the matter was then concluded after the testimony of Ms. Tyson.

As a preliminary matter, the Court will set aside the February 4, 2016 Order entered against Ms. Tyson. Pursuant to Fed.R.Civ.P. 60(b), made applicable via Fed.R.Bankr.P. 9024, on grounds that the Court may relieve a party from an order for mistake, inadvertence, surprise, or excusable neglect. The Court finds that Ms. Tyson residing outside of Michigan, caring for her mother, and dealing with her mother's subsequent passing meet the indicated burden and justify relieving her from the February 4, 2016 Order. The Court vacates that order, finding that Ms. Tyson satisfied the requirements that Rule 60(b) relief be sought "[o]n motion and just terms[.]" Ms. Tyson, being *in pro per*, effectively sought the substantive relief provided for by that Rule, though she may not have done so by formal pleading or by specifically referring to the Rule.

The U.S. Trustee's allegations are that Ms. Tyson was paid $100 by the Debtor in exchange for assisting him with filing the petition, as so stated by Debtor in his Declaration Under Penalty Of Perjury (Dkt. 4). The U.S. Trustee alleges that Ms. Tyson therefore violated various requirements of 11 U.S.C. § 110 by not identifying herself, not signing documents, and by impermissibly offering legal advice, and also alleging that Ms. Tyson was forever barred from acting as a bankruptcy petition preparer, as provided for in a consent judgment in a separate case, *McDermott v. Tyson*, Case 09-4329 (Dkt. 9). At the evidentiary hearing, Ms. Tyson testified that she never met the Debtor nor was she familiar with him, but spoke with him by phone. They had two phone calls on the same date. Ms. Tyson indicated she received the initial phone call from Debtor, and other calls like it, in connection with her work as a "certified" housing and foreclosure counselor, for which her services and phone number are advertised online. Ms. Tyson testified that it is her usual practice to refer some bankruptcy inquiries to attorneys or to the website of the U.S. Bankruptcy Court for the Eastern District of Michigan. She also testified that the extent of her assistance to the Debtor was directing him to this Court's website, where

information about filing for bankruptcy is publicly available. She indicated that the Debtor himself in fact obtained some information and documents from the Court's website and/or Clerk's Office and she testified that she did not answer any questions regarding bankruptcy, but instead only referred him to the Court's website and did not provide him any information about the filing fee requirements. Ms. Tyson also testified that she may have provided the Debtor with directions to websites that offer the required credit counselling courses, possibly to clear up any misconception the Debtor had that *she herself* offers such courses, and finally, she denied the accuracy of the Debtor's Declaration Under Penalty Of Perjury, which states she was paid $100 by Debtor.

Section 110 and its prohibition on giving advice concerning bankruptcy procedures and rights are "extraordinarily broad." *McDermott v. Hills,* 07-4210 (Bankr. E.D. Mich. Oct. 8, 2008) (quoting *In re Hennerman*, 351 B.R. 143, 151 (Bankr. D. Colo. 2006)). The U.S. Trustee concedes that the injunction against Ms. Tyson is as broad, and no broader, than the requirements of § 110. On the issue of making published information available to prospective debtors, the Court in *In re Rosario*, 493 B.R. 292, 336 (Bankr. D. Mass. 2013) opined:

> While *pro se* debtors are free to consult unlimited resources to assist them in completing the Official Forms, a bankruptcy petition preparer who provides selected written materials to the debtor or directs the debtor to websites for assistance in making legal decisions is essentially giving the debtor legal advice and engaging in the practice of law. By directing the debtor to particular resources or materials, the petition preparer is "effectively suggest[ing] a specific form or course of action." *Stacy,* 193 B.R. at 40.
>
> The very act of directing a prospective debtor to review a particular section of a legal book in and of itself constitutes legal advice. By focusing on one answer and excluding others, the bankruptcy petition preparer steps over the line. As stated by the District Court, "Legal advice is legal advice, whether it comes directly from the petition preparer or indirectly via, for example, a bankruptcy treatise being recited by that preparer. Persons seeking legal assistance tend to place their trust in an individual purporting to have expertise in that area."

*Landry,* 268 B.R. at 304 (quoting *Florida Bar v. Brumbaugh,* 355 So.2d 1186 (Fla.1978)).

(footnote omitted). Similarly, the Court in *In re Gomez*, 259 B.R. 379, 382 (Bankr. D. Colo. 2001) found a § 110 violation where the preparer, among other more egregious things, referred prospective debtors to a collection of legal materials "selected… from internet web sites and published and unpublished sources." The legal principle that can be surmised from these cases is that the gathering, selection, and/or compilation of information can constitute a § 110 violation or be unauthorized practice of law.

Aside from the testimony of Ms. Tyson, the rest of the proofs essentially consisted of what was on the Court's dockets, the most important of which was the Debtor's indicated Declaration Under Penalty of Perjury. That sworn document, signed by the Debtor but not Ms. Tyson, (a) answers "no" to the question "Did you have help in preparing the documents for your bankruptcy filing[?]"; and (b) states that Debtor paid $100 to "Sheila (sic) Tyson" in response to the question "if you did have help, what did you give or promise to give for this help?" At the evidentiary hearing, as noted, Ms. Tyson denied receiving the $100.

In sum, on balance, there is insufficient evidence indicating that Ms. Tyson went beyond referring the Debtor to the Court's website, which contains extensive resources for *in pro per* debtors (including a list of approved credit counseling agencies and *pro bono* attorney resources) or that she elicited the Debtor's personal financial information, prepared documents, or offered information as to substantive legal issues. Absent such and without more, the record is not enough to meet the U.S. Trustee's burden of proof. The Debtor did not testify in person, so in coming to that conclusion, the Court was essentially faced with an evaluation of the credibility of the testimony of Ms. Tyson on one hand, and the indicated filed (and somewhat self-

contradictory) document on the other. The Court felt compelled to choose the former over the latter, hereby noting, however, that may or may not have been the result if in fact the Debtor had personally testified. The Court will therefore deny the U.S. Trustee's primary requested relief.

That said, as a separate matter, the Court has some concerns about the $100 payment. If it was in fact paid to Ms. Tyson, given the Court's ruling, there may yet be some basis for requiring Ms. Tyson to return that sum to him. On the other hand, if it was not in fact paid by Debtor to her, there has to be some concern about his signing and filing a document under oath saying to the contrary. Accordingly, an evidentiary hearing will be held on <u>April 12, 2016 at 10:00am</u> for the sole purpose of factually determining whether or not that $100 was paid, and any appropriate remedy that should result. The Court will contemporaneously enter an appropriate order.

**Signed on March 16, 2016**

                                                        **/s/ Walter Shapero**
                                          **Walter Shapero**
                                          **United States Bankruptcy Judge**